UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jonathon Irish

    v.                         Civil No. 16-cv-430-JD
                                   Opinion No. 2017 DNH 105
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


O R D E R

Jonathon Irish seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, denying his application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. Irish moves to reverse, contending that the Administrative Law Judge ("ALJ") erred in assessing his residual functional capacity and in finding that there were jobs he could do despite his impairments. The Acting Commissioner moves to affirm.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).  If the Acting Commissioner used the correct legal standard and the findings are supported by substantial evidence, the court must affirm the decision, even if the record could support a different conclusion.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

Background

Irish was twenty-eight years old when he filed an application for supplemental security income benefits in December of 2014.  He has a high school education.

During his childhood, Irish lost his left eye in an accident and was the victim of abuse perpetrated by his father. His father was removed from the home when he was ten or eleven. His mother applied for disability for Irish while he was a child.  Irish wears a prosthetic left eye.

Irish was arrested in November of 2013 on federal charges. Pursuant to a court order, Irish was evaluated by Dr. Samantha DiMisa to determine whether he was competent to stand trial. Dr. DiMisa diagnosed posttraumatic stress disorder, attention-

deficit/hyperactivity disorder, and anti-social personality disorder and found that Irish's prognosis was optimistic. Dr. DiMisa concluded that Irish understood the legal proceedings against him, was able to assist counsel in his defense and make decisions regarding his defense, and was competent to stand trial.

On December 11, 2014, Irish pleaded to two of the charges against him and was sentenced to eighteen months of imprisonment with three years of supervised release. He was released based on time served on February 20, 2015.

After he was released from prison, Irish had an evaluation of his prosthetic eye at Eyesight New Hampshire in March of 2015. He was diagnosed with acute conjunctivitis. Irish also began mental health counseling in March of 2015 when he left prison with Counselor Kris Geno at RTT Associates.

In May of 2015, Irish met with Dr. Robert Prescott for a consultative psychological examination related to his application for social security benefits. Dr. Prescott reviewed Irish's history in addition to talking to Irish about his past mental health issues and treatment. Dr. Prescott diagnosed posttraumatic stress disorder and antisocial personality disorder and noted that Irish's ability to handle moderate to high levels of stress was impaired but he could make basic decisions and interact politely with others in a work

environment, although it would cause distress.  He gave Irish a
guarded prognosis because of his questionable insight and legal
record.

Also in May of 2015, state agency psychologist Dr. Stephen
Kleinman reviewed Irish's records and prepared a residual
functional capacity opinion.  Dr. Kleinman found that Irish had
marked limitation in his ability to interact with the public,
moderate limitation in his ability to ask simple questions and
ask for assistance, and moderate limitation in his ability to
get along with co-workers.  Dr. Kleinman found that generally
Irish would do poorly in interacting with the public but could
interact with other people to do simple tasks.

In June of 2015, a state agency physician, Dr. Maghana
Karande, reviewed Irish's records and stated that Irish's vision
impairment was not severe.

Irish continued regular counseling sessions with Counselor
Geno.  Geno continued to record the results of counseling
sessions through the summer of 2015.  By the fall, Geno noted
that Irish had begun to miss appointments because of issues,
including his wife's health, his landlord, and problems with his
vehicle, and by December Irish's attendance had dramatically
declined.

In her periodic review form completed in January of 2016,
Geno noted Irish's problems with attending sessions and also

noted increased concern about Irish's mental health.  On an
undated checklist, Geno listed "Easy Distractibility" and
"Flight of Ideas" along with difficulties in social functioning
and concentration but concluded that Irish was able to function
independently, appropriately, and effectively.  With respect to
the listed impairments in 20 C.F.R. Part 404, Subpart P,
Appendix 1, Counselor Geno addressed Listing 12.06, and noted
that Irish had marked difficulties in several areas, including
the ability to function independently outside of his home.

A hearing was held before an ALJ on March 29, 2016.  Irish
was represented by counsel and testified at the hearing.  He
described his childhood issues, his continuing mental health
problems, and his daily activities.  A vocational expert also
testified who identified work that a person could do with
Irish's vocational and educational characteristics and residual
functional capacity.

The ALJ issued a decision on April 13, 2016, concluding
that Irish was not disabled.  The ALJ found that Irish had
severe impairments of an anxiety disorder, a posttraumatic
stress disorder, a personality disorder, and left eye blindness.
The ALJ also found that Irish had the residual functional
capacity to do a full range of work at all exertional levels but
needed to avoid exposure to workplace hazards and heights and to
avoid bright and fluorescent lights.  The ALJ limited Irish to

simple and unskilled work done in a low-stress environment and
without social interaction with the general public.  Based on
the jobs identified by the vocational expert, the ALJ found that
work existed that Irish could do.  The Appeals Council denied
Irish's request for review, making the ALJ's decision the final
decision of the Acting Commissioner.

## Discussion

In determining whether a claimant is disabled, the ALJ
follows a five-step sequential analysis.  20 C.F.R. § 416.920.
The steps are (1) determining whether the claimant is engaged in
substantial gainful activity; (2) determining whether she has a
severe impairment; (3) determining whether the impairment meets
or equals a listed impairment; (4) assessing the claimant's
residual functional capacity and her ability to do past relevant
work; and (5) determining whether the claimant can make an
adjustment to other work.  § 416.920(a).  The claimant bears the
burden through the first four steps of proving that his
impairments preclude him from working.  Freeman v. Barnhart, 274
F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Acting
Commissioner has the burden of showing that jobs exist which the
claimant can do.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st
Cir. 1991).

Irish contends that the Acting Commissioner's decision must be reversed because the ALJ ignored evidence in assessing Irish's residual functional capacity and because substantial evidence is lacking to support the determination at the fifth step of the sequential analysis that there are jobs he could do. The Acting Commissioner moves to affirm on the grounds that the ALJ properly assessed Irish's residual functional capacity, that Irish waived the issue of whether he can do the jobs identified by the vocational expert by failing to raise it before the ALJ, and that Irish has not shown the step five finding was wrong.

A.    Residual Functional Capacity

A claimant's "residual functional capacity is the most [he] can still do despite [his] limitations." § 416.945(a)(1).  A residual functional capacity is assessed "based on all the relevant evidence in [the claimant's] case record."  Id.  In addition, the ALJ considers all of the claimant's medically determinable impairments, even those not found to be severe at step two.  § 461.945(a)(2).

Irish contends that the ALJ's residual functional capacity assessment was wrong because he ignored record evidence, failed to consider his psychological impairments together rather than individually, and dismissed Counselor Geno's records.  The Acting Commissioner points out that the ALJ did consider the

record evidence and found limitations accordingly. The Acting Commissioner also demonstrates that substantial evidence supports the ALJ's residual functional capacity assessment.

Irish contends that the ALJ found he consistently attended appointments but failed to consider Counselor Geno's report that Irish had had difficulty getting to appointments because of car trouble. The ALJ explicitly considered Geno's report about attendance.

With respect to Geno's other notes and records, the ALJ explained that the treatment notes were largely documentation of Irish's reports of his feelings and symptoms and lacked mental status examination results or other objective opinions about Irish's mental condition. See Tann v. Berryhill, 2017 WL 1326235, at *5, n.6 (D.N.H. Apr. 10, 2017) (claimant's descriptions of symptoms reported in medical notes are not opinions). The ALJ gave Geno's psychiatric checklist little weight as a medical opinion because Geno is not an acceptable medical source, because the checklist was internally inconsistent, and because it lacked clinical observations or documentation of the checked functioning limits. Therefore, contrary to Irish's challenges, the ALJ properly considered and evaluated the records provided by Counselor Geno.

Irish also argues that the ALJ erred in finding that he had only mild limitations, based on his daily activities, when Dr.

Prescott's noted that Irish appeared to have difficulty shopping on his own without significant distress and the record showed he needed a service dog to accompany him. Irish also contends that the ALJ failed to consider his impairments together rather than individually.

Contrary to Irish's view of the decision, the ALJ did consider Irish's complaints of mental health limitations and the symptoms documented in the record. Because of those impairments, the ALJ limited Irish to simple, unskilled work in a low stress environment and precluded social interaction with the general public. Substantial evidence in the record supports the ALJ's assessment. Irish does not show that the residual functional capacity assessed by the ALJ failed to account for his medically determinable impairments.

B. Step Five

Irish also contends that the ALJ's finding at step five that there were jobs he could do despite his impairments is not supported by substantial evidence because "it is more likely than not, he would be exposed to fluorescent lighting" in the jobs identified by the vocational expert. He also contends that he could not do the job of laborer in stores because he would be required to use color vision, depth perception, near acuity, and

hearing.[1]  He argues that the ALJ erred because the jobs the vocational expert identified conflict with the Dictionary of Occupational Titles information about those jobs with respect to exposure to fluorescent lighting.

The Acting Commissioner asserts that Irish waived any issue that the jobs identified by the vocational expert were precluded by exposure to fluorescent lighting by failing to raise that issue during the hearing.  See Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (claims not raised to the ALJ are deemed waived).  Irish's counsel had the opportunity to question the vocational expert about the jobs suggested.  Counsel asked about what a laborer in stores would do, asked about whether an inability to be around cleaning products would preclude that work, and asked about air conditioning and temperature.  Counsel could have, but did not, raise the issue of fluorescent lights.  Therefore, Irish has waived the challenge to the ALJ's step five finding based on the issue of whether the jobs identified would require work under fluorescent lights.  Cf. Moore v. Berryhill, 2017 WL 2296997, at *3 (D.N.H. May 25, 2017) (no waiver based on limited hearing on remand).

_____

[1] The ALJ did not find limitations for color vision, depth perception, near acuity, or hearing.  Irish does not suggest that those should have been included at step two or should have been identified in the residual functional capacity assessment nor does he cite record evidence to support those limitations. Therefore, the cited limitations cannot be considered here.

In addition, substantial evidence supports the ALJ's finding. The vocational expert testified that the identified jobs could be performed by someone who must avoid bright and fluorescent lights. When the hypothetical posed to the vocational expert accurately describes the claimant's limitations, the vocational expert's opinion based on the hypothetical is substantial evidence to support the finding at step five. Cook v. Berryhill, 2017 WL 1135221, at *15 (D. Mass. Mar. 27, 2017). For the reasons stated by the Acting Commissioner, Irish has not shown any conflict between the Dictionary of Occupational Titles and the vocational expert's opinion.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 10) is denied. The Acting Commissioner's motion to affirm (document no. 11) is granted.

The Acting Commissioner's decision is affirmed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

June 6, 2017
cc: Judith E. Gola, Esq.
    T. David Plourde, Esq.